UNITED STATES of America, Appellee,

v.

Willie C. McCOWAN, Appellant.

No. 82–2469.

United States Court of Appeals,
Eighth Circuit.

Submitted April 21, 1983.

Decided May 12, 1983.

John F. Forster, Jr., Wallace, Hilburn, Clayton, Calhoon & Forster, Ltd., North Little Rock, Ark., for Willie C. McCowan.

George W. Proctor, U.S. Atty., Robert L. Neighbors, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before BRIGHT, ROSS and JOHN R. GIBSON, Circuit Judges.

PER CURIAM.

Willie C. McCowan appeals from his conviction in the district court[1] for aiding and abetting in the unlawful acquisition of food stamp coupons in violation of 7 U.S.C. § 2024(b) (Supp. V 1981). McCowan contends on appeal that the district court erred in admitting certain tape recordings into evidence against him and, that there was insufficient evidence to sustain his conviction. We affirm the judgment of the district court.

I. *Background.*

On April 2, 1982, while working in an undercover operation, Investigator Jerry Howard of the Arkansas State Police received a tip from an informant, George White, that a Mr. Cleon Morgan's sister wanted to purchase some food stamps. The next day, Howard and White accompanied Morgan to his sister's house to make the sale. Although Morgan's sister, Lealer Jackson, was not at home, the investigators spoke to Willie McCowan, Jackson's husband. According to Howard, he told McCowan that he had food stamps worth $650 for sale. The two men discussed price and agreed on $325 as the amount to be paid for the stamps. When Jackson arrived, McCowan said something to her that Howard could not hear, and Jackson replied, "We can go them that." She then took some money out of her pants pocket,

and counted out $325. Howard took the money and gave her the $650 worth of food stamps. Before Howard left, he and Jackson discussed the possibility of further food stamp purchases.

On May 14, 1982, Howard and White again went to the Jackson-McCowan residence. This time Howard wore a concealed tape recorder. McCowan answered the door and the three men briefly discussed Howard's having brought more food stamps to sell. McCowan then awakened Jackson, who had been sleeping in the next room, and after further discussion and negotiation, the parties agreed on a price of $400 for $1,000 worth of food stamps. Jackson told Howard she would have the money for him if he would come back after four o'clock that same afternoon. When Howard and White returned, they found Jackson and McCowan on the front porch of a neighbor's house. Jackson handed Howard the $400, and Howard gave her the food stamps. During the transaction, McCowan commented that it took all his and Jackson's money to purchase the food stamps.

On July 12, 1982, McCowan and Jackson were charged with two counts of unlawfully acquiring and possessing food stamps in violation of 7 U.S.C. § 2024(b) (Supp. V 1981).[2] Both parties initially pled not guilty, but Jackson later changed her plea to guilty in exchange for the dismissal of one count of her indictment.

At his trial on November 22, 1982, McCowan admitted that he had been present during the transactions, but he denied any complicity in the purchases. Howard testified as the Government's only witness. The district court admitted into evidence the tape recordings of the May 14 transaction over defense counsel's objections. The jury returned a verdict of guilty

---

1. The Honorable William R. Overton, United States District Judge for the Eastern District of Arkansas.

2. The food stamp fraud statute, 7 U.S.C. § 2024(b)(1) (Supp. V 1981), provides:

[W]hoever knowingly uses, transfers, acquires, alters, or possesses [food stamp] cou-

pons * * * in any manner not authorized by [the Food Stamp Act or the regulations thereunder] shall, if such coupons * * * are of a value of $100 or more, be guilty of a felony and shall, upon the first conviction thereof, be fined not more than $10,000 or imprisoned for not more than five years or both * * *[.]

of aiding and abetting on both counts of the indictment. This appeal followed.

## II. *Discussion.*

### A. *Admissibility of the Tape Recordings.*

McCowan claims that the Government failed to meet the foundational requirements for introducing the tape recordings of the May 14, 1982 transaction into evidence. This court has established that the party seeking admission of a tape recording must show:

(1) That the recording device was capable of taking the conversation now offered in evidence.

(2) That the operator of the device was competent to operate the device.

(3) That the recording is authentic and correct.

(4) That changes, additions or deletions have not been made in the recording.

(5) That the recording has been preserved in a manner that is shown to the court.

(6) That the speakers are identified.

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement. [*United States v. McMillan,* 508 F.2d 101, 104 (8th Cir.1974), *cert. denied,* 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975)].

McCowan contends the Government failed to meet the requirements of the first, second, fifth, and seventh elements of the *McMillan* test. This argument is without merit.

 The very fact that the tape recordings exist establishes that the recording device was capable of picking up sounds and taking the conversation offered. *United States v. Moss,* 591 F.2d 428, 433 (8th Cir.1979). Thus, the Government satisfied the first element of the *McMillan* test. Howard testified that he learned how to use the recorder on the day he made the tapes. This fact, and the fact that Howard successfully made the tape recordings, satisfied the

competency requirement of the second element of the *McMillan* test.

 McCowan next asserts that the Government failed to establish a chain of custody sufficient to meet the requirements of *McMillan*'s fifth element. Howard testified that the Arkansas State Police retained possession of the original recordings [3] from the time he made them. Generally, a district court may assume that public officials who had custody of the evidence properly discharged their duty and did not tamper with the evidence. *See, e.g., United States v. Weeks,* 645 F.2d 658, 660 (8th Cir.1981). If the trial court is satisfied that in reasonable probability the article has not been changed in any important respect, it may permit its introduction into evidence. *United States v. Brown,* 482 F.2d 1226, 1228 (8th Cir.1973). Moreover, "the chain of custody is not relevant when a witness identifies the object as the actual object about which he has testified." *United States v. Derring,* 592 F.2d 1003, 1006 (8th Cir.1979), *quoting United States v. Mahone,* 537 F.2d 922, 930 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). In the case at bar, Howard identified the tapes at trial as identical copies of the originals. Under the circumstances described, the Government satisfactorily demonstrated the preservation of the recordings.

 McCowan argues that the Government failed to satisfy the seventh *McMillan* factor. McCowan contends that Howard improperly induced him and his wife to talk. The evidence indicates, however, that McCowan and Jackson voluntarily entered into the conversation with Howard; Howard offered them no inducement to talk to him. Howard merely provided them another opportunity to purchase food stamps. In responding to the officer, McCowan and Jackson acted of their own free will.

We conclude that the district court acted properly in admitting the tape recordings into evidence.

---

**3.** The district court admitted copies of the original tapes into evidence; the original tapes contained other transactions not relevant to his case.

### B. *Sufficiency of the Evidence.*

McCowan also claims the Government failed to produce sufficient evidence to support his convictions. We disagree. In reviewing challenges to the sufficiency of the evidence, this court must consider the evidence and all reasonable inferences arising therefrom in the light most favorable to the jury's verdict. *See, e.g., United States v. Yancy,* 688 F.2d 70, 71 (8th Cir.1982) (per curiam).

■ The three essential elements of aiding and abetting are: (1) the defendant associated himself with the unlawful venture; (2) he participated in it as something he wished to bring about; and (3) by his actions he sought to make the venture succeed. *United States v. Brim,* 630 F.2d 1307, 1311 (8th Cir.1980), *cert. denied,* 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981). After carefully reviewing the record, we conclude that a jury could reasonably have believed that McCowan's participation satisfied these elements.

■ The evidence indicated that McCowan had not only been present at the April 3, 1982 transaction, but that he negotiated a price for the stamps before Jackson came home. When Jackson arrived, McCowan apparently communicated the agreed price to her and she then paid Howard. The tape recordings and testimony concerning the May 14, 1982 transaction similarly suggest that McCowan participated actively in negotiations for the price of the stamps. Moreover, McCowan's comments indicated that he contributed some of his own money for the purchase. Based on this evidence, the jury could properly have found McCowan to have been more than a passive, sympathetic observer, and that by his affirmative conduct he aided and abetted Jackson on both occasions. We determine that the evidence was sufficient to support McCowan's convictions.

Accordingly, we affirm the district court's judgment.