UNITED STATES of America, Appellee,

v.

Marion B. ROBINSON, Jr., Appellant.

No. 84–2245.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1985.

Decided Jan. 23, 1986.

Rehearing Denied Feb. 27, 1986.

Karen L. Queen, Little Rock, Ark., for appellant.

Robert L. Neighbors, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.

LAY, Chief Judge.

Marion Robinson, Jr. was convicted by a jury of one count of mail theft in violation of 18 U.S.C. § 1708 and of a second count for aiding and abetting mail theft in violation of 18 U.S.C. §§ 2, 1708. Robinson was sentenced to 18 months imprisonment for the mail theft; he received for the aiding and abetting count a three year suspended sentence and was placed on three years probation to commence on his release from his confinement. Robinson appeals, claiming that the evidence was insufficient to support the aiding and abetting conviction and that he was deprived of a fair trial by an allegedly improper in-court identification. We affirm the judgments of conviction on both counts.

In May, 1984, postal inspectors for a Little Rock, Arkansas post office received a report that undelivered food stamps were

missing from the post office. An investigation was commenced to discover whether the stamps were being stolen. On the evening of May 24, 1984, inspectors placed twelve "test" letters containing marked food stamps in a tray on a counter in the post office and put the area under surveillance. Several postal employees and janitorial workers were observed in the vicinity of the counter, but none of them came near the stamps. Then, at approximately 7:50 p.m., inspectors Edwards and Mercante observed a janitorial worker approach the tray containing the test letters. Edwards saw the man stoop over the tray, but did not observe the man actually pick up any of the envelopes. Mercante, who was using binoculars, did see him reach down with his left hand and take three envelopes. Three of the test envelopes were thereafter found to be missing. Neither Mercante nor Edwards knew the man and did not try to apprehend him that evening. Edwards did convey a description of the person to the GSA clerk manager, who told them that defendant Marion Robinson fit Edwards' description.

The next evening, three test envelopes were placed on the tray. Three inspectors, Edwards, Mercante and Drummond, were on the surveillance team that evening. All three observed Robinson and another worker, James Brown, enter the area. Robinson was pulling a trash cart; Brown was holding the back of it. As Robinson and Edwards approached the tray, only inspectors Edwards and Drummond were able to see the pair continuously from the observation area. Both inspectors then saw Brown take the three test envelopes and put them in the trash cart. Inspector Drummond stated that Robinson was facing Brown when Brown took the envelopes and believed that Robinson was watching Brown do it. Inspector Edwards testified, however, that he did not know that Robinson saw Brown pick up the envelopes and noted that Robinson never stopped the forward motion of the cart.

Brown and Robinson then wheeled the cart into a stairwell area, where the inspectors observed them exchange something. Soon thereafter, the inspectors arrested both Brown and Robinson. Robinson agreed to allow the inspectors to search his car. The inspectors discovered the stamps taken that evening inside a magazine on the floor of Robinson's car, and Robinson's car keys were found in Brown's possession.

Brown admitted to the theft but later testified that he did not know if Robinson had seen him take the stamps. Brown further testified that he had not discussed the theft of the stamps with Robinson and that Robinson was not a part of the theft. Robinson denied any knowledge of Brown's theft of the stamps on the second night and denied as well his alleged theft of stamps on the first night.

Brown later pled guilty to a charge of mail theft. Robinson was indicted on two counts of mail theft, for the theft of the stamps on the first night and for aiding and abetting Brown's theft on the second night. He pled not guilty and was tried before a jury in federal district court.[1] The jury convicted Robinson of both offenses, and Robinson appeals both convictions.

**Sufficiency of Evidence**

 Robinson first challenges the sufficiency of the evidence to support his conviction on the aiding and abetting charge. In reviewing sufficiency claims, this court must view the evidence in the light most favorable to the jury's verdict. *United States v. McCowan*, 706 F.2d 863, 866 (8th Cir.1983) (per curiam). All reasonable inferences in favor of the verdict must be drawn from the facts, but a conviction must be supported by substantial evidence and cannot be based on mere suspicion or possibility of guilt. *United States v. Wilson*, 665 F.2d 825, 830 (8th Cir.1981), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982); *United States v. Jones*, 545 F.2d 1112, 1115 (8th Cir.1976),

---

**1.** The Honorable Henry Woods, United States District Judge for the Eastern District of Arkan- sas, presiding.

*cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977). A defendant's association or presence at the crime is thus insufficient to support a conviction. *United States v. Larson,* 760 F.2d 852, 858 (8th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985); *United States v. Lard,* 734 F.2d 1290, 1298 (8th Cir.1984). In the case before us, we must determine whether the facts so viewed sufficiently proved the elements of aiding and abetting, which are: (1) that the defendant associated with the illegal activity; (2) that the defendant participated in it as something he or she wished to bring about; and (3) that the defendant sought by his or her actions to make the activity succeed. *McCowan,* 706 F.2d at 866.

 While a close question, we cannot conclude that the evidence was insufficient to support Robinson's conviction for aiding and abetting Brown's theft. If the only evidence on the record to support the conviction was the testimony concerning Robinson's activities on the night Brown took the envelopes, we might have reached a different conclusion. The inspectors could not testify that they actually saw Robinson watch Brown pick up the stamps. Although Robinson and Brown both testified that Robinson gave his car keys to Brown, there is no direct evidence that Robinson knew Brown's purpose in obtaining the keys. Further, no fingerprints were taken from the stolen envelopes and consequently there is no evidence indicating that Robinson ever touched them.

However, the evidence supporting Robinson's conviction for the theft on the prior evening [2] is strongly probative of his purposeful participation in Brown's theft and would have been properly considered by the jury in reaching a verdict on the aiding and abetting charge. While it would have been improper for a jury to infer from that evidence that Robinson committed a similar theft on the next night, *see* Fed.R.Evid.

404(b), that evidence may be probative of Robinson's motive, intent or knowledge. *Id.* Moreover, evidence of other crimes is relevant to "complete the story of the crime on trial by proving its immediate context." *Carter v. United States,* 549 F.2d 77, 78 (8th Cir.1977); *see also United States v. Derring,* 592 F.2d 1003, 1006–07 (8th Cir.1979). The evidence of Robinson's theft thus would permit a jury to infer that Robinson intended to participate in Brown's theft, that Robinson associated himself with Brown's activity and sought to make the activity succeed by his actions. We therefore conclude that the evidence was sufficient to support Robinson's conviction for aiding and abetting Brown's crime.

**Identification**

 Robinson further challenges both convictions on the ground that he was denied a fair trial by an impermissibly suggestive in-court identification. Identification procedures may violate due process when the procedure is impermissibly suggestive, but only if the identification is also unreliable given the totality of the circumstances. *Neil v. Biggers,* 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972); *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Williams v. Lockhart,* 736 F.2d 1264, 1266–67 (8th Cir.1984). Factors to be considered in evaluating the reliability of an identification include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

---

**2.** To reiterate, Inspector Edwards testified that on the first night, May 24, he observed Robinson bend over the counter where the test envelopes were placed. He did not see Robinson actually take anything because Robinson had

his back to him. Inspector Mercante, however, testified he actually saw Robinson take three envelopes. A short time thereafter the envelopes were inspected and three were found to be missing.

*Manson,* 432 U.S. at 114, 97 S.Ct. at 2253; *see also Biggers,* 409 U.S. at 199–200, 93 S.Ct. at 382.

■ In this case, Robinson contends that inspector Mercante's in-court identification of him as the individual who committed the theft on the first night was both improperly suggested by the prosecutor's questioning and unreliable. Mercante's identification took place in the following colloquy:

Q. All right. Is this the man right here that you saw take the—

MR. HOPKINS: Objection, Your Honor. That's totally suggestive.

MR. BUMPERS: All right. I'm sorry, Your Honor. I'll rephrase that.

BY MR. BUMPERS:

Q. Do you see the man in the courtroom who took the envelopes?

A. Yes, sir, I do.

MR. HOPKINS: Your Honor, it's going to be impossible to remove the taint from that.

THE COURT: Well, the objection will be overruled. Go ahead.

THE WITNESS: Would you rephrase the question?

BY MR. BUMPERS:

Q. Do you see the man in the courtroom?

THE COURT: He has already answered it as originally phrased. Go ahead.

BY MR. BUMPERS:

Q. Do you see the man in the courtroom who took the three envelopes that night?

A. Yes, sir, I do.

Q. Would you identify him?

A. It's defendant Marion Robinson.

Q. All right.

MR. HOPKINS: Your Honor, I renew my objection.

THE COURT: It will be overruled.

Robinson contends that Mercante's out-of-court identification was totally unreliable and therefore failed to overcome the sug-

gestiveness of the prosecutor's initial leading question.[3] Robinson relies for this conclusion on certain inconsistencies between Mercante's testimony and the testimony of other inspectors regarding the size of the window through which Robinson was observed and whether Mercante's view was obstructed at the time he allegedly saw Robinson remove the stamps. Mercante stated that the slit in the observation window was four inches wide whereas the other inspectors stated it was only ½ inch wide and that Mercante was mistaken. Robinson further notes that Mercante's contemporaneous description of Robinson was rather vague. In these circumstances, he argues, Mercante's identification testimony impermissibly tainted the trial in violation of due process.

Although inspector Mercante may have erred in describing the size of the window through which he observed the theft, it is undisputed that Mercante did have the opportunity to view Robinson at the time of the crime from an observation deck constructed for that purpose. Nor was Mercante a "casual or passing observer, as is so often the case with eyewitness identification." *Manson,* 432 U.S. at 115, 97 S.Ct. at 2253. Rather, his "degree of attention" was that of a trained investigator using binoculars and he, as well as Inspector Edwards, had Robinson in view almost continuously for five minutes. While Mercante's initial description was somewhat vague, there is no indication that his description was induced by suggestive procedures. The in-court identification did not take place until five months after the theft occurred, but we believe that the fact that Mercante gave a contemporaneous description renders this consideration less weighty. Weighing Mercante's ability to make an accurate out-of-court identification, we are not persuaded that the in-court identification procedure corrupted its reliability. We therefore conclude that Mer-

**3.** At trial an identifying witness' knowledge that the sole defendant is the person charged with the offense is in itself highly suggestive. This fact mitigates the harm of a leading question, however, since the harm already exists. Under such circumstances the reliability of an in-court identification must depend on the reliability of the prior out-of-court identification. *See Sanchell v. Parratt,* 530 F.2d 286, 292–98 (8th Cir. 1976).

cante's in-court identification did not deny Robinson a fair trial.

The convictions on both counts of mail theft are accordingly affirmed.