UNITED STATES of America, Appellee,

v.

**John J. ROACH, Appellant.**

UNITED STATES of America, Appellee,

v.

**Pamela HESTER, Appellant.**

Nos. 93–3177, 93–3197.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1994.

Decided July 5, 1994.

Robert E. Hough, Jr., Fort Smith, AR, for John J. Roach.

Fred Caddell, Fort Smith, AR, for Pamela Hester.

Matthew W. Fleming, Fort Smith, AR, for appellee.

Before BOWMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BOWMAN, Circuit Judge.

John J. Roach and Pamela B. Hester appeal their convictions and sentences for possession of ephedrine with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(1) (1988) and 18 U.S.C. § 2 (1988). We affirm the judgments of the District Court.[1]

## I.

In November 1992, Drug Enforcement Administration (DEA) agents learned that Roach was attempting to purchase chemicals and equipment necessary for the manufacture of methamphetamine. The undercover agents[2] wired a room in a Fort Smith, Arkansas, motel and, on November 30, set up a meeting during which they videotaped Roach detailing the chemicals, glassware, and other equipment he would need for his methamphetamine lab. Hester did not accompany Roach to the meeting, but Roach mentioned that his "old lady" would be helping him "cook" the methamphetamine. The agent asked him to bring her to the next meeting.

On December 3, 1992, the undercover agents and a confidential informant had a second meeting with Roach in the wired motel room. Hester and codefendant Jack Allen Hall[3] accompanied Roach to the meeting. Two undercover agents were present at the meeting to make the controlled delivery of the glassware, ephedrine, and a C–4 plastic explosive brick to the defendants. Like the November 30 meeting, the December 3 meeting was videotaped. After the controlled delivery, DEA agents arrested Roach, Hester, and Hall as they left the motel in a car.

Roach and Hester were indicted and, after trial by jury, were convicted of possession of ephedrine with intent to manufacture methamphetamine. They were sentenced to 120 and 41 months, respectively. This appeal followed.

## II.

We turn first to Roach's claims of error regarding his conviction and sentence for possession of ephedrine with intent to manufacture methamphetamine.

## A.

Roach contends the District Court erred in admitting the videotapes of the November 30 and December 3 meetings between Roach and the undercover agents in the Fort Smith motel room. Roach alleges that they are unreliable due to an inconsistent chain of custody and other foundational problems.

■ No objection was made to the admission into evidence of the December 3 videotape; therefore, we examine the issue of the tape's admissibility only under the plain error standard of review. *United States v. Roenigk*, 810 F.2d 809, 815 (8th Cir.1987); *see United States v. Watts*, 950 F.2d 508, 513 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 1276, 117 L.Ed.2d 502 (1991). We hold that the admission of this videotape was not plain error.

■ Roach raised a specific objection to the November 30 videotape, claiming that the government failed to lay a proper foundation for its admission pursuant to *United States v. McMillan*, 508 F.2d 101 (8th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). We review the District

---

1. The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

2. The undercover operation included DEA agents, a Fort Smith Police Department officer, and an Arkansas State Police officer.

3. Hall was acquitted of the charge of possession with intent to manufacture methamphetamine by the same jury that convicted Roach and Hester.

Court's admission of evidence over objection for clear abuse of discretion. *United States v. Pecina,* 956 F.2d 186, 189 (8th Cir.1992); *United States v. Johnson,* 767 F.2d 1259, 1271 (8th Cir.1985). *McMillan* recites seven foundational guidelines for the admission of electronic tape recordings, these guidelines consisting of a showing by the government that: (1) the recording device was capable of recording the events offered in evidence; (2) the operator was competent to operate the device; (3) the recording is authentic and correct; (4) changes, additions, or deletions have not been made in the recording; (5) the recording has been preserved in a manner that is shown to the court; (6) the speakers on the tape are identified; and (7) the conversation elicited was made voluntarily and in good faith, without any kind of inducement. *McMillan,* 508 F.2d at 104.

■ For his foundational objection, Roach claims that the *McMillan* guidelines were not met as the recording equipment was not shown to be effective and the custody and maintenance of the videotape prior to trial calls its reliability into question. In *McMillan,* we looked to the testimony of the investigating officer who made the tapes to determine whether the recordings were true and accurate. *Id.* at 105. Likewise, in *United States v. Panas,* 738 F.2d 278, 286 (8th Cir. 1984), we found that tapes were properly admitted because testimony from investigators indicated that the tapes were "fair and accurate." [4] Further, we noted in *Panas* that when foundational objections are made regarding the pre-trial custody and maintenance of a tape, the District Court is entitled, absent proof to the contrary, to assume that the investigators properly maintained the tape and did not tamper with it. *Id.* at 287.

We recognize that the District Court admitted the November 30 videotape without requiring that the government establish each formal foundational element set forth in *McMillan.* However, we cannot say that the District Court abused its discretion. Roach's specific foundational challenges and the other

*McMillan* guidelines are satisfied with regard to the November 30 tape. The recording on the videotape establishes that the recording equipment was functioning properly. *United States v. McCowan,* 706 F.2d 863, 865 (8th Cir.1983) (per curiam). The tape's existence also demonstrates that the individual who made the tape was sufficiently skilled in the operation of the recording equipment. Investigator Clemmons, who as an undercover agent was present at both meetings, testified to the process by which the tape was made and stated that it accurately reflected what transpired at the meeting in its entirety. Thus, there was testimony that the tape was authentic and correct. No evidence was presented suggesting that the tape had been altered, erased, or edited in any manner; the parties recorded on the tape were identified; and there is no suggestion, much less any evidence, that the statements and activities recorded on the tape were other than voluntary.

We are satisfied that Clemmons's testimony, along with a lack of any evidence indicating that the tape was mishandled or tampered with, laid an adequate foundation for the admission of the November 30 videotape. *See McMillan,* 508 F.2d at 104–5; *Panas,* 738 F.2d at 287. We will not find that the District Court abused its discretion in admitting the November 30 videotape simply because the *McMillan* guidelines were not explicitly addressed prior to the videotape's admission into evidence.

■ Roach contends that the lack of a clearly audible sound recording accompanying the video recording rendered the tape more prejudicial than probative, and that it should have been excluded on the basis of his Federal Rule of Evidence 403 objection. The District Court has wide discretion to determine the potential for prejudice presented by any item offered into evidence; the standard of review on appeal is abuse of discretion. *United States v. Barrett,* 937 F.2d 1346, 1348 (8th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 322, 116 L.Ed.2d 263

4. The Fourth Circuit noted in *United States v. Clark,* 986 F.2d 65, 68 (4th Cir.1993), that "[i]n *McMillan,* the court did not require strict compliance with the guidelines, and it admitted a tape because its substance and the circumstances under which it was obtained were sufficient proof of its reliability."

(1991). There is no indication that the poor audio recording rendered the tape unduly prejudicial or even that it rendered the tape more prejudicial than it would have been with a clear audio track. We cannot say that Rule 403 required the videotape's exclusion. We conclude that the District Court did not abuse its discretion in admitting the November 30 videotape.

### B.

We now turn to Roach's contention that the government withheld exculpatory information from him and that the District Court erred in denying his motion, pursuant to Federal Rule of Criminal Procedure 16(a), to compel production of the allegedly exculpatory information. We review the denial of Roach's motion for discovery under Rule 16 for abuse of discretion. *United States v. Cole*, 453 F.2d 902, 904 (8th Cir.), *cert. denied*, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972), *citing Hemphill v. United States*, 392 F.2d 45, 48 (8th Cir.), *cert. denied*, 393 U.S. 877, 89 S.Ct. 176, 21 L.Ed.2d 149 (1968). Roach asserts that he needed, and was entitled to, information regarding the government's confidential informant. He requested notes regarding the investigation of his case and all other investigations involving the informant, the informant's criminal history, the informant's address, and records of investigations in which Roach claims to have acted as an informant.[5]

Roach argues that *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), provides the legal underpinning for his Rule 16 motion. This argument is plainly wrong. As we have stated, "*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir.1985) (*quoting United States v. Beasley*, 576 F.2d 626, 630 (5th Cir.1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979)). *Brady* requires the government to furnish Roach with all exculpatory information in its possession or reasonably available to it. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97; *Krauth*, 769 F.2d at

476. However, Roach first must make a preliminary showing that the requested information is exculpatory. *See Krauth*, 769 F.2d at 476. Roach makes no colorable argument that the information he sought to compel was exculpatory.

The government is entitled to refuse discovery of reports or other memoranda prepared by government attorneys and agents in connection with an investigation or prosecution. Fed.R.Crim.P. 16(a)(2); *United States v. Sileven*, 985 F.2d 962, 966 (8th Cir.1993) (per curiam). The government also may refuse to disclose the criminal record of a potential witness, such as the confidential informant in this case, who is not called to testify at trial. *See United States v. Taylor*, 542 F.2d 1023, 1026 (8th Cir.1976), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977). The government was not required to inform Roach of the address or whereabouts of any potential witness. *United States v. Hutchings*, 751 F.2d 230, 236 (8th Cir.1984), *cert. denied*, 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 75 (1985); *United States v. Little*, 562 F.2d 578, 581 (8th Cir.1977). As the government was under no obligation to disclose the information Roach requested, the District Court did not abuse its discretion in denying Roach's Rule 16 motion.

Roach further claims that the government withheld exculpatory evidence by not obtaining information necessary to his defense of acting under color of law. *See* Fed.R.Crim.P. 12.3(a)(1). Roach asserts that when he was arrested, he was actually acting as a confidential informant for a Sequoyah County Sheriff's deputy whose name and location were unknown to Roach at the time of trial. In order to mount this defense, Federal Rule of Criminal Procedure 12.3(a)(1) requires that the defendant "identify the law enforcement or federal intelligence agency and any member of such agency" for whom the defendant allegedly acted as an informant. Pursuant to Rule 12.3(a)(1), Roach submitted a list of law enforcement agencies he claims to have worked for as a confidential informant: the Sequoyah County sheriff's office, the DEA, and the Sebastian and Craw-

---

5. We note that the government informed Roach of the name of the confidential informant.

ford County prosecutors' offices. In response, the government made inquiries and determined that Roach was not working for any of the listed agencies at the time of the sting operation.

Roach argues that the government should have obtained proof that he was working for the Fort Smith Police Department or the Arkansas State Police. However, Roach did not list the Fort Smith or Arkansas State Police in his Rule 12.3 notice; thus, the government had no reason to make inquiries regarding his cooperation with these agencies. We conclude that Roach's argument lacks merit.

### C.

Roach challenges all aspects of his sentence: the criminal history category, the base offense level, and the enhancement to his base offense level.

■ Concerning his criminal history category, Roach claims that the District Court erred in finding that Roach was on parole when he was arrested on December 3, 1992. This finding made it necessary for the court to add two points in determining Roach's criminal history category. United States Sentencing Commission, *Guidelines Manual*, § 4A1.1(d) (1992). Roach claims he was not on parole at the time. We review the District Court's findings of fact for the purposes of sentencing for clear error. *United States v. Garrido*, 995 F.2d 808, 812 (8th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 331, 126 L.Ed.2d 276 (1993).

The documents accompanying Roach's parole transfer from California to Arkansas show that he was not to be released from parole until October 6, 1994. Furthermore, Roach's Arkansas parole officer, Paul Larcade, testified that he considered Roach to be under parole supervision during the time in question, even though Roach had not reported for supervisory meetings for some time. Sent. Hr'g Tr. at 646–47. Based on this evidence, the finding of the District Court that Roach was on parole on December 3, 1992, is not clearly erroneous.

■ Next, Roach argues that the court erred in its finding concerning the quantity of ephedrine he possessed and thus erred in determining his base offense level. We review for clear error the District Court's drug quantity findings. *Garrido*, 995 F.2d at 812.

At trial, the government introduced a twenty-gram sample taken from one of the five 500–gram bottles marked "ephedrine" supplied to Roach by undercover agents and seized when Roach was arrested. The sample was determined to be ephedrine. Roach points out that the contents of the remaining four bottles were not tested and therefore, he argues, the District Court erred in concluding that they contained ephedrine and in including the 2,000 grams of whatever substance they contained in the calculation of his base offense level. His argument must fail. In *United States v. Johnson*, 944 F.2d 396, 404–05 (8th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991), we held that random testing of substances for drug content is sufficient for sentencing purposes. *United States v. Martz*, 964 F.2d 787, 790–91 (8th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 823, 121 L.Ed.2d 694 (1992). Further, the District Court can rely on statements made at trial in making factual findings at sentencing. *United States v. Lowrimore*, 923 F.2d 590, 594 (8th Cir.), *cert. denied*, 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 105 (1991). The court had before it testimony that the four tape-sealed, "ephedrine"-labeled jars, identical to the one from which the sample was taken, in fact contained ephedrine. Thus, we cannot say that the District Court committed clear error in including the 2,000 grams from the untested containers in the quantity of ephedrine for which Roach was responsible.

■ As his final attack on his sentence, Roach challenges the two-level enhancement to his base offense level for possession of a dangerous weapon, U.S.S.G. § 2D1.11(b)(1), arguing that the enhancement was improper because the District Court acquitted him of knowingly carrying a destructive device, the C–4 plastic explosive.[6] This argument is

---

6. At the close of the government's case, the District Court granted Roach's motion for a judg-

ment of acquittal on Count II, consisting of possession of a destructive device, C–4 plastic explo-

meritless. Roach is correct in asserting that the District Court acquitted him of knowingly carrying a destructive device and found that the C–4, in the form it was given to Roach, was missing the mechanism required for detonation. However, because the standards of proof are different, we have consistently held that acquittal on a weapons charge does not preclude a sentencing enhancement for the acquitted conduct. *United States v. Meyers*, 990 F.2d 1083, 1086 (8th Cir.1993); *United States v. England*, 966 F.2d 403, 409–10 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 668, 121 L.Ed.2d 592 (1992); *United States v. Johnson*, 962 F.2d 1308, 1313 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 358, 121 L.Ed.2d 271 (1992); *United States v. Dawn*, 897 F.2d 1444, 1449–50 (8th Cir.), *cert. denied*, 498 U.S. 960, 111 S.Ct. 389, 112 L.Ed.2d 400 (1990) (acquittal on use of a firearm and enhancement for use of a firearm).

The District Court found that Roach possessed a dangerous weapon during the commission of the offense of conviction. We accept the District Court's findings of fact unless they are clearly erroneous; we also defer to the District Court's application of the guidelines to the facts. *United States v. Green*, 889 F.2d 187, 188 (8th Cir.1989) (citing 18 U.S.C. § 3742(e) (1988)). A dangerous weapon is "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1, comment. (n. 1(d)). In determining whether a device or object is a dangerous weapon, the sentencing court is instructed that "[w]here an object that appeared to be a dangerous weapon was brandished, displayed, or possessed," it should be treated as a dangerous weapon. *Id.* At sentencing, the District Court determined that the C–4 appeared to be a destructive or dangerous weapon, and thus it was to be treated as a dangerous weapon for enhancement purposes. Sent. Hr'g Tr. at 605–606. We cannot say that the District Court clearly erred in applying the enhancement to Roach's base offense level. We affirm the District Court's assessment of the two-level enhancement under U.S.S.G. § 2D1.11(b)(1).

sive, during the offense of possession of ephedrine with intent to manufacture methamphet-

### D.

Finally, Roach makes numerous claims that the government failed to "follow the rules" before trial. After careful consideration of Roach's claims of government misconduct, we conclude that they are unfounded and wholly devoid of merit, and we reject them without further discussion.

### III.

We next consider Pamela Hester's claims of error regarding her conviction and sentence. Hester was convicted of aiding and abetting the possession of ephedrine with intent to manufacture methamphetamine, and was sentenced to forty-one months of imprisonment. *See* 21 U.S.C. § 841(d)(2); 18 U.S.C. § 2.

### A.

Hester contends that the District Court erred in denying her motion for acquittal on the ground of insufficient evidence. When reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict rendered; we accept all reasonable inferences which tend to support the jury verdict; and while the evidence need not preclude every outcome other than guilt, we consider whether it would be sufficient to convince a reasonable jury beyond a reasonable doubt. *United States v. Larson*, 760 F.2d 852, 858 (8th Cir.), *cert. denied*, 474 U.S. 849, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985) (citing *United States v. Wells*, 721 F.2d 1160, 1161 (8th Cir.1983)). We can reverse for insufficient evidence only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Henderson–Durand*, 985 F.2d 970, 975 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 164, 126 L.Ed.2d 125 (1993).

To support Hester's conviction for aiding and abetting possession with intent to manufacture, the evidence must show that

amine.

Hester (1) associated with the illegal activities; (2) participated in the activities as something she wished to bring about; and (3) sought by her action to make the activities succeed. *United States v. Robinson,* 782 F.2d 128, 130 (8th Cir.1986); *Larson,* 760 F.2d at 857–58. Hester's " 'mere presence ... at the scene of the crime or ... [her] mere association with persons engaged in illegal activity is not sufficient' " to support the conviction for aiding and abetting. *Larson,* 760 F.2d at 858 (quoting *United States v. Anziano,* 606 F.2d 242, 245 (8th Cir.1979)) (alteration in *Larson* ).

The principal evidence supporting Hester's conviction was contained in the videotapes of the November 30 and December 3 meetings. At the November 30 meeting, Roach said that his "old lady" would help cook the ephedrine, that she was "the biggest dope dealer in southern Arkansas," and that her "old man" was doing seven years in the federal penitentiary. Videotape, November 30, 1992, Govt. Ex. 5 at 6:51–52; Tr. at 270–71. The undercover agents suggested that Roach bring her to the next meeting. Tr. at 274–5. Roach testified at trial that Hester was his "old lady." Tr. at 522. Additional evidence tends to identify Hester as Roach's helper in the methamphetamine manufacturing scheme: Hester's ex-boyfriend was serving a seven-year federal sentence, and Hester indeed accompanied Roach to the December 3 meeting. According to the testimony of the undercover officers, Hester was in the motel room as Roach wrapped the lab equipment in towels and weapons were discussed. Tr. at 284–85. Clemmons also testified that Roach handed the C–4 to Hester who attempted to put it into her jeans. Tr. at 284–85. Further evidence of her guilt is provided by the videotape of the December 3 meeting, which demonstrates her knowing association with the illegal activity. The audio track records Hester saying that she cannot carry the C–4 (handed to her by Roach) because "it won't go down my pants," and she does not have her belt buckle behind which to hide it. Videotape, December 3, 1992, Govt. Ex. 6 at 4:48–49; Tr. at 284. In sum, Hester was

identified by Roach as an active participant in the "cooking" scheme; and she, by her own actions, promoted the scheme when she attended the meeting and later tried to hide the C–4 explosive in her jeans to remove it from the motel room. Tr. at 284–85. Taking the view most favorable to the government and giving it the benefit of all reasonable inferences, *Henderson–Durand,* 985 F.2d at 975, we find that though the evidence against Hester is not overwhelming, it is impossible to say that no reasonable jury could have found her guilty beyond a reasonable doubt.

B.

■ Hester argues that the District Court erred in denying her motion for mistrial after it admitted Roach's out-of-court statements connecting her to the methamphetamine-manufacturing scheme. The statements were admitted under Federal Rule of Evidence 801(d)(2)(E), the coconspirator exception to the hearsay rule. For the reasons set forth below, we conclude that the statements were properly admitted.

Hester asserts that the statements were not admissible against her at trial because no conspiracy was charged. However, "[c]oconspirator statements are admissible even if no conspiracy is charged." *United States v. Snider,* 720 F.2d 985, 992 (8th Cir.1983), *cert. denied,* 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984). "As a general rule, statements made by a co-conspirator in furtherance of the unlawful association ... are properly admissible against all conspirators, whether or not a conspiracy is actually charged." *United States v. Frol,* 518 F.2d 1134, 1136 (8th Cir.1975) (citing *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

■ As a prelude to admitting out-of-court statements under Rule 801(d)(2)(E), the District Court must determine by a preponderance of the evidence that a conspiracy existed to which the declarant and the defendant were parties and that the statements made were in furtherance of the conspiracy.[7]

---

7. The District Court, citing *United States v. Bell,* 573 F.2d 1040 (8th Cir.1978), made a specific finding that a conspiracy existed involving the

three defendants and that Roach's statements were made in furtherance of the conspiracy. Tr. at 384.

*Bourjaily v. United States,* 483 U.S. 171, 176, 107 S.Ct. 2775, 2779, 97 L.Ed.2d 144 (1987); *see United States v. Bell,* 573 F.2d 1040, 1044 (8th Cir.1978). In *Bourjaily,* the Supreme Court held that "when the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence." *Bourjaily,* 483 U.S. at 176, 107 S.Ct. at 2779. Furthermore, in making the preliminary factual determination under Rule 801(d)(2)(E), the District Court is not limited to independent evidence; it may examine the hearsay statements themselves in determining whether a conspiracy exists. *Bourjaily,* 483 U.S. at 181, 107 S.Ct. at 2781–82.

In this case, the District Court did not abuse its discretion in finding that Roach's out-of-court statements were made in furtherance of a conspiracy to which Roach and Hester were parties. *United States v. Paul,* 810 F.2d 774, 778 (8th Cir.1987) (abuse of discretion standard of review). Roach stated at the November 30 meeting that his "old lady" would help him cook the methamphetamine, Tr. at 522, and the undercover agent suggested that Roach bring her to the next meeting, Tr. at 275. At trial, Roach identified Hester as his "old lady," Tr. at 522, and Hester accompanied Roach to the December 3 meeting. She remained in the motel room as Roach wrapped the glassware and chemicals in towels and as weapons were discussed with the undercover agents. Tr. at 284–5. As the other equipment was carried to the car, Clemmons testified that Roach handed the C–4 explosive to Hester who attempted to put it into her jeans. *Id.* The videotape recorded Hester responding to Roach's question, "you can't carry that?," with the statement that she cannot carry it because it "won't go down my pants" and that she does not have her belt buckle behind which to hide it. Videotape, December 3 at 4:48–49. Roach responds that he "can handle a chemical bust" but not "that." *Id.* at 4:44:19, 4:48–49; Tr. at 284. The statements Roach made about his "old lady" at the November 30 meeting were intended to show that Roach and his partner were not novices and were capable of cooking the methamphetamine. Thus, the statements clearly were in furtherance of the conspiracy. Accordingly, we find

no abuse of discretion in the District Court's admission of Roach's out-of-court statements implicating Hester. *See* Fed.R.Evid. 801(d)(2)(E).

### C.

■■■■ Hester contends that the District Court erred in denying her motion to sever her trial from that of Roach and Hall, claiming she was precluded from any appreciable chance of acquittal in the joint trial. We review the District Court's denial of Hester's severance motion for abuse of discretion, *United States v. Foote,* 920 F.2d 1395, 1398 (8th Cir.1990), *cert. denied,* 500 U.S. 946, 111 S.Ct. 2246, 114 L.Ed.2d 487 (1991), and we will not disturb the District Court's denial unless Hester shows that its ruling "clearly and actually" prejudiced her right to a fair trial. *United States v. Jones,* 880 F.2d 55, 61 (8th Cir.1989) (citing *United States v. Garcia,* 785 F.2d 214, 220 (8th Cir.), 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986)). "In general, persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together." *Id.* at 63 (quoting *United States v. Adkins,* 842 F.2d 210, 211 (8th Cir.1988)).

In this case, the parties were indicted together on similar evidence from the same events: the videotapes, Roach's statements, and the testimony of the undercover agents. While the videotapes and other evidence against Roach may have been stronger than that implicating Hester, severance is not required " 'merely because the evidence against one defendant is more damaging than the evidence against another.' " *United States v. Garrett,* 961 F.2d 743, 746 (8th Cir.1992) (quoting *United States v. Davis,* 882 F.2d 1334, 1340 (8th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990)). Nor is severance required "simply because evidence may be admissible as to one defendant but not as to another." *United States v. Helmel,* 769 F.2d 1306, 1322 (8th Cir.1985). In any event, Hester fails to identify any evidence that would not have been admitted against her had she been tried alone and she does not come even close to showing that she was denied a fair trial by reason of having been tried with Roach and

Hall. We conclude that the District Court did not abuse its discretion in denying Hester's motion for severance.

## D.

■ Hester argues that the District Court should have dismissed her indictment because of government misconduct before the grand jury. She claims that the grand jury heard perjured testimony by DEA agent Lowery to the effect that, at the December 3 meeting, Hester demonstrated knowledge of the methamphetamine manufacturing scheme. We find this claim entirely meritless. It is well settled that an indictment returned by a legally established and unbiased grand jury "is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974). In any case, there is no evidence that Lowery's statements were untrue or mistaken. We thus reject Hester's claim of error.

## E.

Finally, Hester challenges the calculation of her 41–month sentence. She, like Roach, argues that the District Court erred in determining the quantity of ephedrine attributable to her for purposes of establishing her base offense level. We have addressed this issue fully with respect to Roach. For the reasons set forth in Part II.C. of this opinion, we cannot say that the District Court committed clear error in determining the quantity of ephedrine attributable to Roach and Hester for sentencing purposes.

## IV.

The judgments of the District Court are affirmed.

BRIGHT, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in the result sustaining the conviction of defendant Roach.

I dissent from that part of the majority's opinion sustaining the conviction of Pamela Hester. The affirmance of that conviction rests upon a flimsy evidentiary reed. In my view, affirming Hester's conviction makes a mockery of the rule that a person cannot be found guilty of a crime absent valid proof of guilt beyond a reasonable doubt.

The jury convicted Hester of aiding and abetting the knowing, intentional and unlawful possession of ephedrine with the intent to manufacture methamphetamine. To prove an aiding and abetting charge, the government must establish that (1) the defendant associated with the illegal activity; (2) the defendant participated in it as something she wished to bring about; and (3) the defendant sought by her actions to make the activity succeed. *United States v. Robinson,* 782 F.2d 128, 130 (8th Cir.1986). The government failed to meet its burden of proof as to any of the above elements.

Pamela Hester did not participate in the one-hour and four-minute, November 30, 1992 videotaped transaction regarding the arrangements to manufacture methamphetamine. Further, Hester testified that she went to the motel on December 3 (the second meeting) after the confidential informant told her a friend, somebody she had known a long time ago, for whom she had made a bridle, would be at the motel and wanted to see her. Tr. (Vol. III), at 411.[1] At that videotaped rendezvous, while co-defendant Roach prepared the glassware for transit, Hester spent the first five to six minutes in the bathroom, and sat on a bed outside the view of the surveillance camera watching television during four of the last six minutes. The government failed to elicit facts indicating Hester's presence derived from her knowledge of the methamphetamine manufacturing scheme or of any intent on her part to associate with or bring about illegal conduct. Hester did attempt to conceal on her person the C–4 block. However, the significance of Hester's possession of the blue plastic-wrapped package remains equivocal: the C–4 was not iden-

---

1. In fact, one of the undercover officers, Arkansas State Police Officer Steve Clemmons, testified that Roach believed "his old lady" knew Clemmons, that he had recently bought a saddle or bridle from her. Tr. (Vol. II), at 285, 293.

tified in her presence, nor did any testimony link her to knowledge of what the package contained. Further, the videotape does not disclose whether Hester attempted to place the C–4 down her pants on her own initiative or at Roach's direction.[2] Consequently, the evidence only establishes that Hester associated with Roach. As this court has recognized on numerous occasions, an accused's mere association with a co-defendant or mere knowledge of the transaction is insufficient to prove an aiding and abetting offense. *See, e.g., United States v. Termini,* 992 F.2d 879, 882 (8th Cir.1993); *United States v. Duke,* 940 F.2d 1113, 1117 (8th Cir.1991).

Finally, no evidence independent of Roach's statements about his "old lady" connected Hester to any conspiracy. The following statements are at issue:

> ROACH: "My old lady *was* the biggest dope dealer in southern Arkansas for years and years and years and years. Her old man is doing about seven in the feds right now. She's with me."
>
> UNDERCOVER: "She's goin' to have to...."
>
> ROACH: "Cause she's going to be there with me ... yea, she's going to be working with me. It takes four experienced hands to be [inaudible] dope...."

Government Ex. 5, at 6:51:32–6:51:56 (emphasis in audio). When Roach made these statements, he may or may not have been referring to Hester. Moreover, the references to Roach's "old lady" and her assisting in Roach's drug manufacturing operation clear-

ly constitute pure, inadmissible hearsay, as the government failed to establish that a conspiracy existed, that Hester was a member of any conspiracy, and that the declarations were made in the course and furtherance of any conspiracy. *See* Fed.R.Evid. 801(d)(2)(E)[3]; *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987).

In *Bourjaily,* the Supreme Court determined that a district court may consider the hearsay statement in making its factual finding as to whether the statement is admissible under the co-conspirator exception, Rule 801(d)(2)(E). Yet *Bourjaily* did not resolve whether there must be some evidence independent of the hearsay statement to establish the existence of a conspiracy, that the subject of the hearsay was a member of the conspiracy and that the declarations were made in furtherance of the conspiracy. This circuit, however, has decided that issue: "It is generally agreed that 'an otherwise inadmissible hearsay statement cannot provide the sole evidentiary support for its own admissibility.'" *United States v. Garbett,* 867 F.2d 1132, 1134 (8th Cir.1989) (quoting *Bourjaily,* 483 U.S. at 184, 107 S.Ct. at 2783 (Stevens, J., concurring)); *but see United States v. Wood,* 851 F.2d 185, 189 (8th Cir. 1988) (stating in dictum that "the 'independent evidence' rule announced in *[United States v.] Bell*[, 573 F.2d 1040, 1044 (8th Cir.1978)] has now been abrogated by ...

---

**2.** Undercover Arkansas State Police Officer Steve Clemmons testified as follows regarding the C–4:

> A. When I first gave it to Mr. Roach, he handed it to Ms. Hester and then she attempted to put it down in the front of her pants to conceal it, and her belt buckle was too large or something and she gave it back to Mr. Roach.
> Q. Did he make any statement when he took it back from her?
> A. Yes, sir, he said—When we [sic] gave it to her he stated that he could stand the chem charge but he didn't want that.

Tr. (Vol. II), at 284–85.

The videotape of the December 3 meeting does not depict any visual image of Hester's short-term possession of the C–4. Further, though I have reviewed the videotape numerous times, I am unable to discern, unlike the majority, *ante* at 737, whether Hester stated she could not "hold"

or "hide" the C–4 without a belt buckle. Following is my understanding of the conversation at issue:

> Hester: "Can't hold nothing without my belt buckle."

Government Ex. 6, at 4:44:18.

> Roach: "You can't carry that thing in [inaudible]...."
> Hester: "It won't go down my pants without my belt buckle...."

*Id.* at 4:48:07–4:48:16.

**3.** Fed.R.Evid. 801(d)(2)(E), the co-conspirator exception to the hearsay rule, provides that:

> A statement is not hearsay if— ... The statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

*Bourjaily v. United States,* [483] U.S. [171, 183–84], 107 S.Ct. 2775, 2783 . . . .").[4]

Other circuit courts of appeals addressing the issue consistently have held, similar to *Garbett,* that some independent evidence is necessary for the statement properly to fall within the purview of the co-conspirator exception. *See, e.g., United States v. Clark,* 18 F.3d 1337, 1341–42 (6th Cir.1994); *United States v. Sepulveda,* 15 F.3d 1161, 1182 (1st Cir.1993); *United States v. Byrom,* 910 F.2d 725, 736 (11th Cir.1990); *United States v. Daly,* 842 .F.2d 1380, 1386 (2d Cir.), *cert. denied,* 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *United States v. Zambrana,* 841 F.2d 1320, 1343–46 (7th Cir.1988); *United States v. Silverman,* 861 F.2d 571, 577–78 (9th Cir.1988); *United States v. Martinez,* 825 F.2d 1451, 1453 (10th Cir.1987). *See also United States v. Gambino,* 926 F.2d 1355, 1361 n. 5 (3d Cir.) (although not reaching the issue, the court recognized that every court of appeals that has decided the question has required some independent evidence), *cert. denied,* —— U.S. ——, 112 S.Ct. 415, 116 L.Ed.2d 436, 501 U.S. 1206, 111 S.Ct. 2800, 115 L.Ed.2d 973 (1991).

I now turn to the application of the current test under Rule 801(d)(2)(E). A review of the facts in *Bourjaily,* and the Court's analysis, is instructive:

> In May 1984, Clarence Greathouse, an informant working for the Federal Bureau of Investigation (FBI), arranged to sell a kilogram of cocaine to Angelo Lonardo. Lonardo agreed that he would find individuals to distribute the drug. When the sale became imminent, Lonardo stated in a tape-recorded telephone conversation that he had a 'gentleman friend' who had some questions to ask about the cocaine. In a subsequent telephone call, Greathouse spoke to the 'friend' about the quality of the drug and the price. Greathouse then spoke again with Lonardo, and the two arranged the details of the purchase. They agreed that the sale would take place in a designated hotel parking lot, and Lonardo would transfer the drug from Great-

house's car to the 'friend,' who would be waiting in the parking lot in his own car. Greathouse proceeded with the transaction as planned, and FBI agents arrested Lonardo and petitioner immediately after Lonardo placed a kilogram of cocaine into petitioner's car in the hotel parking lot. In petitioner's car, the agents found over $20,000 in cash.

> . . . .

> . . . . Each one of Lonardo's statements may itself be unreliable, but taken as a whole, the entire conversation between Lonardo and Greathouse was *corroborated by independent evidence.* The friend, who turned out to be petitioner, showed up at the prearranged spot at the prearranged time. He picked up the cocaine, and a significant sum of money was found in his car. On these facts, the trial court concluded, in our view correctly, that the Government had established the existence of a conspiracy and petitioner's participation in it.

*Bourjaily,* 483 U.S. at 173–74, 180–81, 107 S.Ct. at 2777–78, 2781–82 (emphasis added).

Although this case and *Bourjaily* bear certain facial similarities—both involved drugs, the "co-conspirators" failed to mention the defendants by name, and each defendant showed up at a prearranged place at a prearranged time accompanied by the "co-conspirator"—the case against Hester contains no independent evidence corroborating the existence of a conspiracy in which Hester took part. As the majority observed, only the following facts exist in support of Hester's conviction: "Hester was identified by Roach as an active participant in the 'cooking' scheme; and she, by her own actions, promoted the scheme when she attended the meeting and later tried to hide the C–4 explosive in her jeans to remove it from the motel room." *Ante* at 737 (internal citation omitted). Yet without proof that Hester knew the contents of the blue plastic-wrapped package to be an explosive device or

---

**4.** *Wood*'s citation to *Bourjaily,* however, for the proposition that the district court no longer need consider independent evidence in evaluating the admissibility of a hearsay statement, pertains to the Court's discussion under the Confrontation Clause and the lack of necessity of inquiry into the reliability of such statements. That issue differs from the initial consideration of whether evidence exists to support a factual finding of a conspiracy.

that its contents were to be used in connection with a methamphetamine manufacturing scheme, no intent can be inferred. Similarly, Hester's presence at the motel, absent knowledge of the drug scheme or the purpose of the meeting, is of minuscule probative value. Under the test expounded in *Bourjaily*, the facts cited by the majority, independent of the hearsay statements, are insufficient to corroborate Roach's statements, thereby rendering those statements inadmissible under the co-conspirator exception to the hearsay rule.

Because the district court erroneously admitted Roach's statements about his "old lady," I turn next to whether allowing the inadmissible hearsay into evidence resulted in reversible error.

Without Roach's statements mentioning his "old lady" and stating she would be assisting Roach in the manufacturing endeavor, which impermissibly give rise to the inference that the statements referred in fact to Hester, the evidence established only that Hester associated with Roach—evidence insufficient to support a conviction. And as demonstrated by the verdicts, the jury ascertained this distinction when it acquitted codefendant Hall, who like Hester, had not attended the first meeting and merely accompanied Roach to the motel for the second. The evidence failed to establish that Hall had any knowledge of the illegal activity, and thus could not support an aiding and abetting charge. Similarly, absent the clearly inadmissible hearsay from which the jury must have inferred Hester's knowing participation in the drug operation, a reasonable jury could not have found her guilty. *Compare Termini*, 992 F.2d at 881–82 (return of funds and collection report that, unbeknownst to defendant, disguised the illegal payouts held insufficient to support conviction for aiding and abetting a money laundering scheme) *and United States v. Weston*, 4 F.3d 672, 674–75 (8th Cir.1993) (possession alone of methylamine held insufficient to support conviction of possession with intent to manufacture methamphetamine) *with United States v. Gaines*, 969 F.2d 692, 694–96, 698 (8th Cir.1992) (reciting substantial independent evidence held sufficient to support conviction

for aiding and abetting the attempted possession of heroin) *and Duke*, 940 F.2d at 1117–18 (reciting circumstantial evidence deemed sufficient to support conviction for aiding and abetting the attempt to possess with intent to distribute cocaine).

No person ought to be put in prison absent valid proof beyond a reasonable doubt. Because the government only established that Hester associated with Roach, and otherwise obtained the conviction upon inadmissible hearsay, I would reverse her conviction.