# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2804

_____

United States of America,         *
       *
        Appellee,        *
       *   Appeal from the United States
      v.        *   District Court for the
       *   Northern District of Iowa.
Omoro S. Crusoe,        *
       *   [UNPUBLISHED]
        Appellant.        *

_____

Submitted: March 11, 2008
Filed:  June 30, 2008

_____

Before MURPHY, ARNOLD and BENTON, Circuit Judges.

_____

BENTON,  Circuit Judge.

A jury convicted Omoro S. Crusoe on two counts of distributing heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(c).  He appeals, alleging insufficient evidence and the erroneous admission of partially inaudible tape recordings.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

In November 2003, Crusoe was living in a halfway house where he met C.J. Morgan.  C.J. walked away from the house; he was arrested and sent to jail for 60 days.  While in jail and at the house, C.J. allowed his younger brother, Levi, to use his cell phone.

Crusoe was released from the halfway house before C.J. returned from his walk-away. Shortly after his release, Crusoe called C.J.'s cell phone but reached Levi. Crusoe and Levi engaged in numerous transactions involving marijuana, cocaine and heroin, until July 7, 2004.

In late February 2004, C.J. offered to cooperate with law enforcement, for money and because Levi was becoming more heavily involved with heroin. Greg Brugman of the Iowa Department of Narcotics Enforcement was assigned to work with a federal Drug Enforcement Agency (DEA) task force. Brugman worked with C.J. to make controlled buys from Crusoe.

On March 22, 2004, C.J. and Crusoe agreed to meet. Brugman, working undercover, picked up C.J. at the halfway house. Other agents were providing surveillance. C.J. was searched for contraband and provided cash for the buy. A transmitter was placed in his pocket. Crusoe and C.J. later met at a mall, then moved into a restroom. The transmitter did not work through the restroom walls during the actual exchange of drugs for money. After C.J. left the mall, he returned to Brugman's car, handing over unused money and the heroin he purchased. He was searched for contraband; none was found.

On March 30, 2004, in a similar transaction, Crusoe sold C.J. drugs. Brugman drove C.J. to the same mall to meet Crusoe. Again, the transmitter did not work from the restroom where the exchange occurred. This time C.J. gave all the DEA money to Crusoe. After the buy, C.J. gave Brugman the drugs he had purchased and was searched for other contraband. None was found.

Crusoe alleges there was insufficient evidence to support his convictions. The standard of review is de novo when determining the sufficiency of the evidence for a jury verdict. *United States v. Youngman*, 481 F.3d 1015, 1019 (8th Cir. 2007). The evidence is viewed in the light most favorable to the government. *Id*. A jury verdict

will be affirmed if there is evidence to convince a reasonable jury of guilt beyond a reasonable doubt. *Id*.

First, Crusoe maintains that Brugman, at trial, failed to characterize C.J. as a drug dealer. Brugman testified he would characterize C.J. not as a "drug dealer," but only as one who "dealt drugs to support his habit." Crusoe says this distinction was crucial to his defense because it would show C.J.'s true status to the jury. Crusoe asserts that both Brugman and the federal prosecutor kept this fact from the jury. Crusoe alleges the prosecutor knew this testimony to be untrue but "stood by passively" while the case agent gave misleading or false testimony. To the contrary, the prosecutor called C.J. a "drug dealer" in his opening statement and closing argument. C.J. admitted at Crusoe's trial that he had sold heroin in the past. There was no prosecutorial misconduct simply because the DEA agent would not "agree" to an unqualified characterization of C.J. as a drug dealer. Furthermore, Brugman's opinion was not false testimony, only an opinion for the jury to evaluate. *See United States v. Kirkie*, 261 F.3d 761, 768 (8th Cir. 2001) (witness credibility is within the province of the jury).

Second, over Crusoe's objection, the district court[1] admitted the partially inaudible tapes of the controlled buys. Various parts of C.J.'s testimony were corroborated by audio tapes, photographs, and testimony of agents who watched the transactions before and after the two entered the restroom.

The admission of a tape recording is reviewed for an abuse of discretion. *United States v. Webster*, 84 F.3d 1056, 1064 (8th Cir. 1996) (quoting *United States v. Martinez*, 951 F.2d 887, 888 (8th Cir. 1991). The case of *United States v.*

___

[1]The Honorable Linda Reade, Chief United States District Judge for the Northern District of Iowa.

*McMillan*, 508 F.2d 101, 104 (8th Cir. 1974), governs the admissibility of tape recordings.  It lists seven foundational requirements:

> (1) The recording device was capable of taking the conversation now offered in evidence.
>
> (2) The operator of the device was competent to operate the device.
>
> (3) The recording is authentic and correct.
>
> (4) Changes, additions or deletions have not been made in the recording.
>
> (5) The recording has been preserved in a manner that is shown to the court.
>
> (6) That the speakers are identified.
>
> (7) The conversation elicited was made voluntarily and in good faith, without any kind of inducement.

Crusoe challenges the recordings on the basis of requirements (1) and (6).  The fact that the conversation was recorded satisfies requirement (1).  *See **United States v. McGowan,*** 706 F.2d 863, 865 (8th Cir. 1983).  As for requirement (6), C.J. identified his own voice and Crusoe's voice.  *See **United States v. Wells,*** 347 F.3d 280, 288 (8th Cir. 2003).

Finally, Crusoe challenges the recordings because they were partially inaudible. The key is to determine, whether in light of the purposes for which the tapes are offered, they are so inaudible as to make the whole recording untrustworthy. ***Webster***, 84 F.3d at 1064.  If a listener can understand essential parts of the conversations, the tapes may be admitted. ***United States v. Bell***, 651 F.2d 1255, 1259 (8th Cir. 1981). The government claims the tapes were admitted for three purposes: (1) to rebut Crusoe's position that C.J. tampered with them, (2) to corroborate C.J.'s testimony about the second purchase, and (3) to rebut Crusoe's claim that C.J. sold heroin to

-4-

him. The portions of the recordings during the actual exchanges of money for drugs are inaudible. However, the conversations before and after the exchanges provide insight into the relationship between Crusoe and C.J. The court did not abuse its discretion in admitting the audio tapes.

The judgment is affirmed.

_____