# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-2998
_____

United States of America

*Plaintiff - Appellee*

v.

Carmen Haire

*Defendant - Appellant*

_____

No. 14-3196
_____

United States of America

*Plaintiff - Appellee*

v.

George Lee

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 22, 2015
Filed: November 23, 2015
_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.
_____

MURPHY, Circuit Judge.

Agents from the Drug Enforcement Administration (DEA) overheard George Lee making statements on a wiretapped phone about the shipment of cocaine and marijuana from Houston to distributors in St. Louis. Carmen Haire was arrested on his way to Houston with over $33,000 of cash that he was carrying to Lee. After a jury trial Lee was convicted of conspiracy to distribute cocaine and marijuana, conspiracy to launder the proceeds of drug trafficking, and possession of a firearm in furtherance of a drug trafficking crime.[1] Haire was convicted of conspiracy to launder the proceeds of drug trafficking. Lee appeals, challenging the foundation for the wiretap recordings, the admission of expert testimony interpreting language used on the recordings, and the admission of statements mentioning drug cartels. Haire also appeals, challenging the admission of statements made by his coconspirators, the jury instruction on willful blindness, and the sufficiency of the evidence supporting his conviction. We affirm.

I.

In November 2011 DEA agents learned that Juan Williams was supplying cocaine to a drug dealer in St. Louis. In January 2012 postal inspectors intercepted a package sent from Houston to St. Louis containing 3 kilograms of cocaine and

_____

[1] The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

-2-

arrested the intended recipient, Carl King. In King's possession were two phones that had been in contact with cell phones used by Williams. DEA agents applied for and received a Title III warrant to wiretap Williams's phones and later received a warrant to wiretap Lee's phone. See 18 U.S.C. § 2518.

During the wiretapped conversations Lee arranged to ship drugs to Williams and to other distributors in Mississippi and South Carolina. Lee discussed the price of the cocaine and how much money he was owed. Lee also called his own suppliers to order cocaine.

In April 2012 the DEA learned from the wiretap that Williams and Jamiel Johnson were bringing cash from St. Louis to Lee in Houston. The DEA had local police stop the car. A search of the car revealed a hidden compartment containing $69,910 in a vacuum sealed plastic bag. Although police seized the money, Williams and Johnson did not realize it until after they were released and checked the compartment. Williams called Lee to discuss the stop and the missing money. Lee in turn called an unnamed man to ask for advice. Later that month the DEA learned that Lee was mailing a package to South Carolina. Police obtained a search warrant and intercepted the package, which contained 3 kilograms of cocaine, crack cocaine, and marijuana. After the intercept Lee made a phone call to discuss retrieving the package from the post office, presuming that there was a problem with the delivery. Johnson testified at trial about other shipments of cocaine and marijuana that Lee had sent to Williams in exchange for cash. Johnson personally saw Williams receive a total of over 10 kilograms of cocaine and over 100 pounds of marijuana from Lee.

In May 2012 Lee and Williams made a series of phone calls about sending Haire from St. Louis to Houston with "sealed up" money. Williams was to get him a one way train ticket to Houston, and Lee would purchase a one way plane ticket back to St. Louis. Williams spelled Haire's name for Lee so he could purchase the plane ticket and then called Haire to get his date of birth. Lee and Williams also

discussed giving Haire a phone to use during the trip. In these conversations, Williams referred to Haire as his uncle or "Unc," and said he had "already told him the deal" and that Haire "already [knew] what's going on." Lee stated that "Unc 100," meaning that Haire was reliable or solid. At trial Johnson identified Haire as Williams's uncle and testified that Williams said that he had paid Haire to receive packages of drugs at Williams's father's address.

On June 1, 2012 a DEA agent spotted Haire boarding a train in St. Louis carrying a black backpack. Early the next morning at the train station in Longview, Texas, where passengers bound for Houston transfer to a bus, DEA officer Chad Lanier saw Haire anxiously looking at a drug sniffing dog. Lanier stopped Haire as he attempted to board a bus to Houston. Lanier said he was looking for a possible terrorist, and asked Haire if he was carrying any narcotics or large sums of currency. Haire said he had a little bit of money, and pulled a roll of about ten $20 bills out of his pocket. Lanier asked if he had any more money in his bag and Haire replied, "Yeah, I do have a little bit of money." When asked how much, Haire first stated that he had a few thousand dollars, but then clarified that he had $25,000. Haire told Lanier that the money was his and that he was going to buy a car.

Lanier obtained Haire's consent to search his backpack, which contained clothing and two nested vacuum sealed plastic bags containing rubber banded stacks of bills totaling $33,530. A canine alerted to an odor of narcotics on the backpack, and the currency smelled of marijuana when officers later opened the sealed bags. The DEA seized the currency. After the dog alerted on the backpack, Haire told Lanier that he smoked marijuana but did not have any on him. Haire also changed his story about planning to buy a car, stating that he was going to fly back to St. Louis instead. Later that day Williams called Lee to report that "they hit Unc" and relayed what Haire had told him about the stop and seizure.

In February 2013 the DEA obtained a seizure warrant for Lee's car. When agents executed the warrant Lee gave them consent to search his house, where they found marijuana, electronic scales, $5,000 in currency, chemicals used to dilute cocaine, and several firearms.

Lee and Haire were each indicted for conspiracy to distribute cocaine and marijuana, 21 U.S.C. §§ 841, 846, and conspiracy to launder the proceeds of drug trafficking, 18 U.S.C. § 1956. Lee was also indicted for possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). Williams, Johnson, and King were also charged with conspiracy to distribute drugs and pled guilty. The jury found Lee guilty of all charges and found Haire guilty of the money laundering charge but not guilty of the distribution charge. The district court sentenced Lee to 240 months imprisonment and Haire to 36 months imprisonment. Lee and Haire now appeal their convictions.

II.

Lee contends that the district court improperly admitted the wiretapped phone conversations because the government failed to authenticate the recordings. See Fed. R. Evid. 901(a). Our review is for clear abuse of discretion. United States v. Henley, 766 F.3d 893, 912 (8th Cir. 2014). Admission of wiretap recordings is likely proper if the government establishes that: (1) the device was capable of recording the statements; (2) the operator was competent to operate the device; (3) the recordings are authentic and correct; (4) changes have not been made; (5) the recordings have been preserved; (6) the speakers are identified; and (7) the conversation was voluntary. Id. (citing United States v. McMillan, 508 F.2d 101, 104 (8th Cir. 1974)). We have explained that these McMillan factors are merely helpful guidelines and must be viewed in light of the circumstances rather than rigidly applied. Id.

The very fact that the recordings in this case exist establishes that the device was capable of recording conversations, United States v. McCowan, 706 F.2d 863, 865 (8th Cir. 1983) (per curiam), and the fact that the operator successfully made the recordings satisfies the competency requirement, United States v. Franklin, 747 F.2d 497, 498 (8th Cir. 1984) (per curiam). At trial DEA special agent Brett Johnson identified the speakers on the recordings and testified about the equipment used by the DEA to make unalterable recordings of each conversation. That testimony and the fact that nothing showed the recorded conversations were other than voluntary satisfies the remaining McMillan factors. See United States v. Roach, 28 F.3d 729, 733 (8th Cir. 1994). Given Johnson's testimony and the absence of any evidence indicating that the recordings were not authentic, the district court did not abuse its discretion in admitting them into evidence.

Lee next argues that the district court abused its discretion in allowing special agent Johnson to give expert testimony about the meaning of drug related terms used by Lee and his coconspirators on the recordings. See Fed. R. Evid. 702. It is "well established that experts may help the jury with the meaning of jargon and codewords" used by drug dealers. United States v. Delpit, 94 F.3d 1134, 1145 (8th Cir. 1996). Lee concedes that Johnson was qualified to interpret terms and phrases used on the recordings that were "common drug terminology," but contends that Johnson was not an expert with respect to certain phrases that were "specific only to this case." Lee fails to cite a single example of Johnson's testimony that was improper. Because his failure to cite to the record does not comply with Fed. R. App. P. 28(a)(8)(A), see United States v. Ali, 799 F.3d 1008, 1026 n.3 (8th Cir. 2015), and because our review of the record indicates that special agent Johnson applied his expertise to help the jury understand recordings that were permeated with drug jargon, United States v. Placensia, 352 F.3d 1157, 1164–65 (8th Cir. 2003), we conclude that the district court did not abuse its discretion in admitting Johnson's testimony.

-6-

Lee finally asserts that the district court abused its discretion in admitting testimony about "drug cartels and Colombians" which he claims was prejudicial. Notwithstanding his failure to cite to particular statements in the record, Lee appears to focus on two recordings in which he himself stated that he knew someone who "know[s] cartel members" and described his attempts to connect with Colombians whom he was willing to pay extra for their purer cocaine. Lee's statements were admissible non hearsay because they were statements by a party opponent. Fed. R. Evid. 801(d)(2)(A). Lee argues that the drug cartel evidence was not admissible because it was meant to prejudice him or prove his guilt by association with the cartel, see United States v. McKay, 431 F.3d 1085, 1093 (8th Cir. 2005), but that was not the case here. Lee's statements indicated his knowing and active participation in a conspiracy to distribute cocaine and were thus relevant to the charges he faced. See United States v. Ellison, 616 F.3d 829, 833–34 (8th Cir. 2010). Given the strength of the government's evidence there was little risk that the statements would cause the jury to find him guilty solely because of any affiliations with the cartel. See id. We conclude that the trial court did not abuse its discretion in admitting these portions of Lee's wiretapped statements.

III.

Haire contends that the district court abused its discretion by admitting portions of the wiretapped conversations between Lee and Williams and portions of Johnson's testimony. Federal Rule of Evidence 801(d)(2)(E) permits the government to admit, as nonhearsay, statements made by a coconspirator of a defendant "during and in furtherance of the conspiracy." In order to do so, the government must prove by a preponderance of evidence "that a conspiracy existed, that the defendant and declarant were members of the conspiracy, and that the statements were made during and in furtherance of the conspiracy." United States v. Williams, 87 F.3d 249, 253 (8th Cir. 1996). The district court conditionally admitted the evidence pursuant to United States v. Bell and then at the close of evidence made a finding that the

government had proven each prerequisite by a preponderance of the evidence. See 573 F.2d 1040, 1044 (8th Cir. 1978). We review the decision to admit coconspirator statements for abuse of discretion, and have stated that a district court's discretion is particularly broad in conspiracy trials. United States v. Young, 753 F.3d 757, 771 (8th Cir. 2014).

Haire does not dispute that the statements Lee and Williams made to each other about his trip to Texas were made during and in furtherance of a conspiracy to launder the proceeds of drug trafficking. He contends only that the government produced insufficient evidence showing that he was a member of that conspiracy or any conspiracy at all. To determine whether the government has established that a defendant was a member of a conspiracy, a district court may consider the content of the proffered coconspirartor statements so long as a statement does not provide the sole evidence of its own admissibility. United States v. Roach, 164 F.3d 403, 409 (8th Cir. 1998).

The statements Haire challenges, in which Lee and Williams plan his trip to Texas and discuss his stop by law enforcement, are each strong evidence that he was a member of the conspiracy. The wiretapped statements made prior to the trip are reinforced by the statements made after the stop, and vice versa. The statements are also reinforced by the evidence obtained in Texas. After Lee and Williams discussed sending "Unc" to Texas with drug money, Haire traveled from St. Louis to Texas, acted suspiciously around law enforcement, and was found with a large amount of cash in a vacuum sealed bag. Johnson's testimony that Haire was involved in Williams's drug dealing operation also supports a finding that he was a member of a conspiracy to launder the proceeds. Finally, it is irrelevant whether the allegedly inadmissible statements occurred before Haire actually joined the conspiracy, because the conspiracy "existed at the time the statements were made." United States v. Tremusini, 688 F.3d 547, 555 (8th Cir. 2012). The district court did not abuse its discretion in determining that a preponderance of evidence showed that Haire was a

member of the conspiracy and thus admitting the wiretapped statements that mention him.

Johnson's testimony that Williams had said that he used Haire to receive packages of drugs was made in furtherance of the charged conspiracy to distribute drugs because it identified Haire's role and the method by which Williams was shipping the drugs. See United States v. Ragland, 555 F.3d 706, 713 (8th Cir. 2009). Johnson's testimony supports a finding that Haire was a member of that conspiracy. The wiretapped statements regarding the trip to Texas and Haire's actions in transporting the sealed cash also support a finding that he was a member of the conspiracy to distribute drugs. Haire was acquitted of the distribution charge, but "there is nothing inherently inconsistent" in the district court concluding that Haire's participation in the conspiracy had been proved by a preponderance of the evidence and the jury later concluding that his guilt had not been proved beyond a reasonable doubt. United States v. Patino-Rojas, 974 F.2d 94, 96 (8th Cir. 1992). The district court did not abuse its discretion in admitting Johnson's testimony.

Haire next argues that the district court erred by giving a willful blindness instruction that the jury could find that he acted knowingly if it found beyond a reasonable doubt that he "believed there was a high probability that the currency in his suitcase involved some form of illegal activity and that he took deliberate actions to avoid learning of that fact." We review the decision to give a willful blindness instruction for abuse of discretion. United States v. Aleman, 548 F.3d 1158, 1166 (8th Cir. 2008). A willful blindness instruction is appropriate "when the defendant asserts a lack of guilty knowledge, but the evidence supports an inference of deliberate ignorance." United States v. Whitehill, 532 F.3d 746, 751 (8th Cir. 2008) (quoting United States v. Gruenberg, 989 F.2d 971, 974 (8th Cir. 1993)). Haire traveled to Texas on a one way train ticket carrying over $33,000 in cash in a vacuum sealed bag on behalf of his nephew Williams. Johnson's testimony also showed that Haire was aware that Williams was a drug dealer. If Haire did not question the

purpose of his trip or know that he was carrying drug money, "it was only because [he] consciously chose to be ignorant of those facts." United States v. Hiland, 909 F.2d 1114, 1131 (8th Cir. 1990). We reject Haire's contention that the willful blindness instruction lowered the government's burden of proof, because the district court instructed the jury that it could not find he acted knowingly if he was merely negligent, careless, or mistaken as to the fact that his suitcase contained drug proceeds. Whitehill, 532 F.3d at 752. We therefore conclude that the district court did not abuse its discretion in giving the willful blindness instruction.

Haire finally asserts that the government failed to present sufficient evidence to convict him of conspiracy to launder the proceeds of drug trafficking. To obtain a conviction under 18 U.S.C. § 1956(a)(1)(A)–(B), (h), the government was required to prove that Haire "knew of and intentionally joined a conspiracy to conduct financial transactions involving drug proceeds intending either to promote the conspirators' illegal activity, or to conceal the nature, location, source, ownership, or control of the proceeds." United States v. Elder, 682 F.3d 1065, 1071 (8th Cir. 2012). When reviewing the sufficiency of the evidence, "we look at the evidence in the light most favorable to the government and accept all reasonable inferences that support the verdict." United States v. Martin, 777 F.3d 984, 992 (8th Cir. 2015).

The government's evidence showed that Haire knowingly and intentionally joined a conspiracy to conduct financial transactions that concealed the nature of drug proceeds. See Elder, 682 F.3d at 1071–72. After Williams and Johnson were caught transporting drug proceeds to Lee by car, Lee and Williams were recorded planning a trip to send Haire to Texas by train with "sealed up" money. Haire then traveled to Houston and was caught with the money. Haire contends there is no evidence that he knew the money was the proceeds of an unlawful activity, but there was strong circumstantial evidence that he had this knowledge. None of Haire's own statements were caught on the wiretap, but mens rea is rarely proven directly. It is rather "almost always proven by using inferences reasonably drawn from the evidence as a whole."

United States v. Ott, 741 F.2d 226, 228–29 (8th Cir. 1984). Williams told Lee on the wiretap that Haire "already [knew] what's going on," and Lee stated that Haire was "100," or reliable to assist in the operation. Haire had also previously served as Williams's paid intermediary for receiving shipments of drugs. Haire was carrying an abnormally large amount of cash in a vacuum sealed bag. By inference, Haire knew the illicit origins of the money he was transporting. We conclude that there was sufficient evidence to convict.

## IV.

For these reasons we affirm the judgments of the district court.

_____