# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-3327
_____

United States of America

*Plaintiff - Appellee*

v.

Bryan Kimble

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: June 17, 2022
Filed: No: November 22, 2022
_____

Before LOKEN and KELLY, Circuit Judges, and MENENDEZ,[1] District Judge.
_____

MENENDEZ, District Judge.

Bryan Kimble was convicted of four counts related to the distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1) and § 846. On appeal,

---

[1]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota, sitting by designation.

he challenges three evidentiary rulings made by the district court[2] during his trial. For the reasons set forth below, we affirm.

## I.    Background

In 2019, following the receipt of information from a cooperating defendant, the Bureau of Alcohol, Tobacco and Firearms began investigating Bryan Kimble's alleged involvement in the distribution of heroin, fentanyl, crack cocaine, and marijuana in the St. Louis area.

### A. The Investigation

Special Agent Sean Becker ("SA Becker") and other officers accessed various databases to corroborate the information the cooperator provided about Kimble. Officers obtained a booking photo of Kimble from an unrelated matter. In addition, SA Becker obtained a record of Kimble's driver's license from the Missouri Department of Revenue database. This document provided a home address, 5375 Wells Avenue, as well as a photograph of Kimble. SA Becker also viewed recent traffic citations Kimble received that listed the same address.

On October 10th, the cooperator met with SA Becker and set up a meeting with Kimble to purchase crack cocaine. The cooperator called Kimble using SA Becker's phone and put the call on speakerphone so that SA Becker could listen. This phone call was recorded by SA Becker. During this call, Kimble told the cooperator to "go to my house," which the cooperator had previously visited. The cooperator and SA Becker then drove to 5375 Wells Avenue. Kimble soon arrived at the Wells address and told the pair to "follow me." SA Becker testified at trial that he was able to identify Kimble at that time because Kimble's appearance matched both the driver's license photograph and the booking photo he had reviewed. The voice of the person telling them to follow him was the same,

---

[2] The Honorable Stephen R. Clark, United States District Judge for the Eastern District of Missouri.

according to SA Becker, as the voice he had heard minutes before on the phone instructing them to "go to my house." Ultimately, the deal between SA Becker and Kimble did not go through on that day because Kimble spotted law enforcement vehicles in the area.

Later, SA Becker contacted Kimble directly, without the cooperator's assistance, to get the deal back on track. They communicated through text messages and a phone call, using the phone number that the cooperator had provided. Kimble agreed to meet SA Becker the next day to sell him $250 worth of crack cocaine. When SA Becker arrived at the meeting place, Kimble pulled up in a car next to him. A woman in the passenger seat gave Becker the drugs and took the money. During a subsequent call that was also recorded, Kimble complained about only receiving $230, instead of the agreed upon $250.

A second transaction, arranged via text message between Kimble and SA Becker, took place on October 16th. Again, Kimble was driving and the actual hand-to-hand deal was conducted by a woman in the passenger seat. The final transaction occurred on October 22, and it was arranged by phone between Kimble and SA Becker. On that day, another officer, Special Agent Liberto, saw Kimble driving toward the direction of the meeting place. This transaction, like the others, was also conducted by an unidentified woman with Kimble driving the vehicle. Kimble also had a subsequent call with SA Becker in which he discussed having been at that deal.

## B. Procedural History

In April 2021, Kimble was indicted and charged with three counts of distribution and one count of conspiracy to distribute a controlled substance. Prior to trial, Kimble moved to exclude the text messages, phone calls, and video recordings from the October encounters, arguing that the government would be unable to lay the necessary foundation. At a pretrial hearing, the government set out its plan for laying the required foundation. The government described the events leading to the text messages and recordings, including how SA Becker got Kimble's

phone number from the cooperator and that SA Becker directly saw and heard Kimble at the controlled buys. The district court ruled that, assuming the government could lay the proffered foundation during the trial, the evidence was admissible.

Kimble renewed the objection before trial, referencing hearsay, lack of foundation, and insufficient authentication. He also indicated that he was seeking a standing objection so he would not have to object to each recording. Although the court allowed the standing objection, it was overruled. With respect to foundation, the judge reiterated that the government would need to lay the required foundation and instructed Kimble that if they did not, he would need to make a specific new objection at that time as opposed to just saying "as previously stated." During trial, when the government offered the recordings and text messages for admission, Kimble's counsel objected, saying "[j]ust the objection that's previously stated." The court overruled "for the reasons previously stated."

The government moved at trial to introduce as an exhibit the driver's license record that SA Becker had reviewed when initially corroborating the information from the cooperator. Kimble objected on the grounds of lack of foundation and best evidence. At a sidebar outside the presence of the jury, he explained that "the best evidence would be the Department of Revenue record from the Department of Revenue itself with a business affidavit." The government responded that "this is a database routinely utilized in [the] regular course of business by law enforcement officers; and they are able to testify to the authenticity of that document through their daily routine, their daily pulling of these documents." The court overruled the objection, and the driver's license record was admitted into evidence. The jury convicted Kimble on all counts, and he was sentenced to 255 months in prison.

## II.    Discussion

On appeal, Kimble argues that the district court erred in admitting (1) the driver's license record with his name, address, and photograph; (2) the video and

audio recordings from the controlled buys, including the phone calls arranging those buys; and (3) the text messages SA Becker and Kimble exchanged during the undercover investigation.

We generally review a district court's evidentiary rulings for an abuse of discretion. *United States v. Midkiff*, 614 F.3d 431, 441 (8th Cir. 2010) (citation omitted). But even if we determine that the district court abused its discretion in admitting or excluding certain evidence, we will not reverse if the error was harmless. *Id.*; *see also* Fed. R. Crim. P. 52(a). An error is harmless if "no substantial rights of the defendant were affected," and "the error did not influence or had only a very slight influence on the verdict." *United States v. Bercier*, 506 F.3d 625, 632 (8th Cir. 2007) (quoting *United States v. Cortez*, 935 F.2d 135, 140 (8th Cir. 1991). If, however, the defendant failed to preserve an issue for appellate review, we review only for plain error. *See United States v. Combs*, 44 F.4th 815, 818 (8th Cir. 2022); *see also* Fed. R. Crim. P. 52(b).

### A. Missouri Department of Revenue Driver's License Record

We start with Kimble's challenge to the admission of the driver's license record. At trial, Kimble objected to the record's admission on "[l]ack of foundation and on best evidence" grounds.[3] However, the thrust of his argument below and on appeal is primarily that the driver's license record is a record of a regularly conducted activity, often called a business record, and the government did not lay the proper foundation to meet the business record exception to the rule against hearsay, Fed. R. Evid. 803(6).

---

[3]The government argues that we should treat Kimble's hearsay objection as waived because it wasn't raised with sufficient specificity below. Indeed, the bases for both the objection and the government's response in support of admissibility were less than pellucid, both at trial and in the post-trial briefing, leaving the trial court to guess at the precise nature of the objection. However, we decline to consider the issue waived. Both Kimble's attorney and the government discussed whether the business record exception applied, though they did so without explicit reference to either the rule number or the hearsay doctrine.

Kimble contends that because the Missouri Department of Revenue manages the driver's license database, the government should have called a witness from that department to testify about the record rather than SA Becker. Fed. R. Evid. 803(6). We agree. Rule 803(6) provides in relevant part that a business record may be admitted at trial, even if it would otherwise be hearsay, so long as the record's "custodian or another qualified witness" testifies that the record was "kept in the course of a regularly conducted activity" and "making the record was a regular practice of that activity." *Id.*

Even though the government established that SA Becker accesses this database as part of his "daily routine," he is not a "qualified witness" under Rule 803(6). *See United States v. Riley*, 236 F.3d 982, 984 (8th Cir. 2001) (holding that a police officer was not a "qualified witness" for purposes of Rule 803 where he lacked personal knowledge about how the challenged record was prepared and maintained). The focus of the business record exception is on the process by which the record is created, not the process by which it is accessed. *See, e.g.*, *United States v. Voice*, 622 F.3d 870, 879 (8th Cir. 2010) (holding that an employee of South Dakota's Division of Criminal Investigation was a "qualified witness" for purposes of admitting a sex-offender registration document because her agency maintained the database in its normal course of business).

The government argues on appeal that it was not necessary to have a custodian of the database testify because the driver's license record was not hearsay. The government claims the record was not offered for the truth of Kimble's address or identity, but rather to show the course of the investigation and the steps taken by SA Becker. We disagree for two reasons. First, the government failed to raise this argument below, significantly undermining its claim now that the purpose of the document was merely to explain the course of the investigation. In fact, the government responded to Kimble's objection at trial by arguing that SA Becker is "able to testify to the authenticity" of the driver's license record because of his "daily routine" and "daily pulling of these documents," and made no mention of it not being

offered for the truth of its contents. In laying the foundation before admitting the record, the government asked SA Becker if this was a database he accesses as a law enforcement officer on a "daily or routine basis." All of this suggests the government's position at trial was that the evidence was being offered as a record of a regularly conducted activity, contemplated by Fed. R. Evid. 803(6), and not as non-hearsay evidence under Fed. R. Evid. 801.

Additionally, the government relied on the document for its truth as to Kimble's address and identity at multiple points during the trial. SA Becker testified, for example, that "[b]ased upon [his] review of Mr. Kimble's Department of Revenue photograph," he was "absolutely certain that Mr. Kimble was behind the Toyota Camry when it pulled up in front of 5375 Wells." And the government's own briefing explains that the driver's license record "provided necessary information to confirm the appropriate target." We reject the government's reframing of the purpose of this evidence upon appeal. The driver's license record was admitted as proof of Kimble's address and photo to lend support to SA Becker's identification of Kimble.

Although the evidence was offered for the truth of the matter asserted and the government did not have a custodian from the Missouri Department of Revenue testify about the record, any resulting error was harmless. First, even without introducing the record at issue into evidence at trial, SA Becker was fully free to testify regarding the information he obtained from the database. Such testimony would not implicate the rule against hearsay, and he could have testified regarding the address it contained and the similarity of the photograph he reviewed to the man who conducted the drug deals. Moreover, the government had independent sources for Kimble's address and photo, making the improperly admitted evidence entirely cumulative. *See United States v. Melecio-Rodriguez*, 231 F.3d 1091, 1094 (8th Cir. 2000). Regarding the address, SA Becker testified that the same address was listed on the traffic citations he viewed that Kimble had received a few weeks earlier. The cooperator also knew the address "because he'[d] been at the house before." Further, when the cooperator and SA Becker called Kimble to set up the first buy, Kimble

instructed them to go to his house, and then the person SA Becker identified as Kimble appeared when they arrived at 5375 Wells Avenue. These additional connections between Kimble and 5375 Wells Avenue makes the address on the driver's license record diminish in importance.

As for the photo of Kimble on the driver's license record, a booking photo of Kimble from an unrelated matter was admitted into evidence. SA Becker testified that he was certain it was Kimble who pulled up beside him at 5375 Wells Avenue not only because he had seen the driver's license record but also because he had seen "numerous booking photos" captured by another database. And another officer, Special Agent Liberto, also identified Kimble as driving past him toward the direction of the third controlled buy. This is not a case where the "extra helping of evidence" from the challenged record is "so prejudicial as to warrant a new trial." *United States v. Bercier*, 506 F.3d 625, 633 (8th Cir. 2007). The information on the improperly admitted driver's license record was cumulative of other evidence, and any error from admitting the record is not reversible.

## B. Recordings of the Controlled Buys

We next consider Kimble's challenge to the admission of Government Exhibit 5 and its various subparts, which contained video and audio files from the four dates in which SA Becker purchased or attempted to purchase controlled substances from Kimble. We review the admission of these recordings for an abuse of discretion because Kimble preserved the issue for appeal. *Midkiff*, 614 F.3d at 441. Kimble first moved before trial to exclude the recordings on the grounds that the government would be unable to lay the proper foundation for their authentication. At the start of trial, he renewed his objection on the grounds that the recordings were hearsay, not properly authenticated, and without a proper foundation. The judge overruled Kimble's standing objection to all the recordings at the outset but instructed Kimble that if the government did not lay a sufficient foundation, he should make a new and specific objection at that time rather than "just saying 'as previously stated.'" While

Kimble's counsel restated the original objection during the trial, he offered no new objection to the adequacy of the foundation laid.

The Federal Rules of Evidence require audio and video recordings to be authenticated. Fed. R. Evid. 901. We have adopted a non-exhaustive list of factors for a court to consider in determining whether a proper foundation has been laid to authenticate recordings. *United States v. McMillan*, 508 F.2d 101 (8th Cir. 1974). We consider whether a party has established that (1) the device was capable of recording, (2) the operator of the recording device was competent, (3) the recording is authentic and correct, (4) the recording has not been changed, (5) the recording has been preserved, (6) any speakers in the recording are identified, and (7) the conversation was voluntary. *Id.* at 104. To be able to identify a speaker in a recording, a witness only needs to have "heard the voice of the alleged speaker at any time." *Id.* at 105 (quotation omitted); *see also* Fed. R. Evid. 901(b)(5). Kimble argues that the government did not establish the second, third, and sixth *McMillan* factors for the video and audio files contained in Government Exhibit 5.[4]

We have repeatedly cautioned that the *McMillan* factors are not to be applied rigidly. In *McMillan*, for example, the officer did not satisfy the sixth factor by sufficiently identifying the defendant's voice. *Id.* at 105. We nevertheless held that a proper foundation was laid for the recordings because sometimes "the substance of the communication may itself be enough to make prima facie proof" of its reliability. *Id.* at 105 (quotation omitted). The *McMillan* factors are "merely helpful guidelines." *United States v. Haire*, 806 F.3d 991, 996 (8th Cir. 2015). A recording can be admitted "even if not every factor is explicitly and completely met," as long

---

[4]To the extent Kimble argues that additional *McMillan* factors were not satisfied for Government Exhibit 5E-1 and 5E-2, we decline to reach such an argument. Kimble's objection to these parts of the Exhibit, which were offered for admission during redirect of SA Becker, was "[j]ust the same objection as previously stated." For that reason, we treat his challenge to all files contained in Government Exhibit 5 as challenging the second, third, and sixth *McMillan* factor.

as the totality of the circumstances satisfy a court that the recording is reliable. *United States v. Oslund*, 453 F.3d 1048, 1057 (8th Cir. 2006).

Here, Government Exhibit 5 included at least 14 separate files containing video and audio recordings, phone calls, and text messages. Kimble is correct that the government did not satisfy every *McMillan* factor before every piece of evidence in Exhibit 5 was admitted. The district court, however, did not abuse its discretion by admitting the recordings. Considering the "totality of the circumstances surrounding the recordings," the government laid an adequate foundation to assure the district court of the recordings' reliability. *Oslund*, 453 F.3d at 1057. And the government readily established all three *McMillan* factors that Kimble contests on appeal.

First, the government established that SA Becker was operating the recording equipment and was competent to do so. Kimble's contention that "it is unknown who was the operator of the recording device," is in tension with his opening statement in which he described that SA Becker's vehicle had "the capabilities of picking up audio . . . [and] video" and that SA Becker was "always wearing a microphone." Before Government Exhibit 5 was admitted into evidence, SA Becker testified that there was video and audio of his encounter with Kimble on October 10. He explained that during undercover investigations, he "always attempt[s] to run video if not audio for sure." And after Government Exhibit 5A-1 and 5A-2 were played to the jury, SA Becker specified that the camera is on "his person." Later in his testimony, SA Becker explained aspects about capturing the recordings, such as why angles are restricted or how light saturation from the sun affects the shot. SA Becker's testimony satisfies the second *McMillan* factor that he was competent to operate the recording equipment. We have also held that a recording's existence itself can establish that the person operating the device was competent to operate the equipment. *Haire*, 806 F.3d at 996; *see also United States v. Roach*, 28 F.3d 729, 733 (8th Cir. 1994).

Second, we conclude that the government adequately established that the recordings in Government Exhibit 5 were "authentic and correct." *McMillan*, 508 F.2d at 104. When presented with the evidence, SA Becker confirmed that he had reviewed the files, that they were "essentially a copy of evidence from the originals," and that they were "in substantially the same condition as the original documents." Kimble argues that "substantially the same condition" goes to whether the recordings had been altered and not whether they were "accurate and complete." We think this elevates semantics over substance, especially in light of our guidance that the *McMillan* factors are guiding principles rather than a rigid test. *Oslund*, 453 F.3d at 1055. Further, there was no allegation at trial, or on appeal, that the recordings were anything but authentic and correct. Absent such a suggestion, a district court may "assume that the investigators properly maintained the tape and did not tamper with it." *Roach*, 28 F.3d at 733. SA Becker also specifically testified after Exhibits 5B-1 and 5B-6 were played to the jury that the recordings "accurately" reflected the conversations he had with Kimble. For these reasons, the government satisfied the *McMillan* factor regarding whether the recordings were authentic and correct.

Third, we reject Kimble's argument that the government did not sufficiently identify the speakers in the recordings. Before Government Exhibit 5 was admitted, SA Becker testified that he had reviewed the files contained therein, and they were "videos as well as communication between [himself] and Mr. Kimble." After Government Exhibit 5 was published and the first two phone calls were played to the jury, SA Becker provided further testimony identifying Kimble in the recordings. SA Becker testified that Exhibit 5A-1 was a "portion of a phone call with Mr. Kimble" that the cooperator initiated, in which Kimble directed them to go to his house. Exhibit 5B-1 was then played to the jury, and SA Becker explained that it was a video and audio recording capturing when he arrived at Kimble's address with the cooperator, and a man in a vehicle drove up and instructed them to follow him. The government asked SA Becker who he heard in the recording, and SA Becker described that it was "the defendant talking to myself and the cooperating defendant." SA Becker testified that he recognized the voice in the recording as "the same voice that [was] just heard on the previous phone call." He explained that only

-11-

a few minutes had passed between when he heard the voice on the first phone call (Exhibit 5A-1) and when he heard the voice at Kimble's address (Exhibit 5B-2).

SA Becker later agreed that it was "safe to say all communication" was "between [him] and Mr. Kimble," and the communication took place through phone calls and text messages. Throughout direct examination, SA Becker repeatedly identified the voice in the recordings as Kimble. To be able to identify a speaker's voice in a recording, a witness only needs to have "heard the voice of the alleged speaker at any time." *McMillan*, 508 F.2d at 105 (quotation omitted); *see also* Fed. R. Evid. 901(b)(5). SA Becker solidly meets this requirement and adequately identified Kimble in the recordings.[5]

Kimble takes the position that we should not consider SA Becker's testimony identifying him as the speaker in the recordings because this testimony came after the recordings were admitted into evidence. We reject this argument for two reasons. First, it ignores the context in which the objection to the recordings arose. Kimble moved before trial to have the recordings excluded. At the pretrial hearing, the government set out a plan detailing how SA Becker's testimony would provide the proper foundation. The district court concluded that if the government "can lay the foundation that they have stated, then it would become simply a question of weight, not admissibility," and denied Kimble's motion on that basis. At trial, Kimble made a standing objection to all files contained in Government Exhibit 5. The district court reiterated its ruling on Kimble's previous motion, stating that "with respect to the foundational issues," the government "will need to establish that foundation." The district court overruled Kimble's objection, but it instructed Kimble that should he think the government failed to lay the anticipated foundation, he should make a specific objection at that time and "get into it and say why no foundation has been laid as opposed to just saying 'as previously stated.'" If Kimble believed it was a

---

[5]Kimble's contention that SA Becker failed to satisfy the identification requirement because Becker was unable to initially identify his own voice in one recording goes to the credibility of SA Becker's identification (and thus the weight the jury should assign to the evidence), not its admissibility.

problem for the government to have laid an adequate foundation *after* the recordings were admitted, then he needed to object with specificity as to the foundational defects during the testimony.  This he did not do.

The second reason we reject Kimble's temporal argument is that we will not reverse a defendant's conviction simply because the full foundation for its authentication was laid after the evidence was admitted.  We find support in the text of Federal Rule of Evidence 901, which does not specify a temporal requirement, just that evidence must be authenticated.  Further, we did not find an abuse of discretion in *United States v. Roach*, where the district court admitted a videotape without requiring the government to first establish each *McMillan* factor.  28 F.3d at 733.  It was enough for us in that case that an officer who was present at the meeting with the defendant later testified that the tape accurately reflected what transpired. *Id.*  We explained in *Roach* that we would not find an abuse of discretion "simply because the *McMillan* guidelines were not explicitly addressed *prior to* the videotape's admission into evidence." *Id.* (emphasis added); *see also United States v. Henley*, 766 F.3d 893, 913 (8th Cir. 2014) (holding that the district court did not err by "examining the evidence of authenticity as a whole," including later testimony by witnesses who testified after the recording's admission).  We are bound to the same conclusion here.  SA Becker's testimony, even though it came after the admission of the recordings into evidence, adequately laid the foundation to authenticate the recordings.

As in *McMillan*, "[o]ur holding does not constitute approval of the procedure followed at the trial."  508 F.2d at 105.  Of course a party should lay the proper foundation before offering recordings for admission into evidence. *See United States v. Webster*, 84 F.3d 1056, 1064 ("As a *preface* to the introduction of a recording, the Government must make a *prima facie* showing of the tape's trustworthiness.") (emphasis added).  But because a proper foundation was laid, we cannot say that the district court abused its discretion by admitting the audio and video recordings into evidence.

-13-

### C. Text Messages Between Special Agent Becker and Kimble

Although Kimble addressed the text messages separately from the video and audio recordings, they were contained in the same exhibit, and the same analytical framework applies to their admissibility. For the reasons already explained, we hold that the government laid an adequate foundation to authenticate the text messages. Kimble specifically argues that the text messages were not properly authenticated because the only testimony regarding them before they were admitted was that SA Becker stated that Government Exhibit 5 included text messages. This is true. But after the exhibit was admitted, SA Becker testified that he "only communicated with one phone number during this investigation," and it was "(314) 390-8781," the number provided by the cooperator. Even though this authentication came after the text messages were in evidence, the district court did not abuse its discretion by "examining the evidence of authenticity as a whole," *Henley*, 766 F.3d at 913.

### III.   Conclusion

The judgment of the district court is affirmed.

_____